Approved: _____
Micah F. Fergenson / David J. Robles
Assistant United States Attorneys

Before:   HONORABLE STEWART D. AARON
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x

**22 MAG 1053**

UNITED STATES OF AMERICA

      - v. -

HECTOR ROBLES,
    a/k/a "Oreja,"
LUIS CRUZ,
    a/k/a "Mostro," and
CARLOS MACCI,
    a/k/a "Carlito,"

                Defendants.

- - - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violation of
21 U.S.C. § 846

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

MARK GURLESKI, being duly sworn, deposes and says that he is a Detective with the New York City Police Department (the "NYPD") and charges as follows:

### COUNT ONE
### (Narcotics Conspiracy)

1. From at least in or about August 2020 to in or about February 2022, in the Southern District of New York and elsewhere, HECTOR ROBLES, a/k/a "Oreja," LUIS CRUZ, a/k/a "Mostro," and CARLOS MACCI, a/k/a "Carlito," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree, together and with each other, to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that HECTOR ROBLES, a/k/a "Oreja," LUIS CRUZ, a/k/a "Mostro," and CARLOS MACCI, a/k/a "Carlito," the defendants, and others known and unknown, would and did distribute and possess with intent to

distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substances that HECTOR ROBLES, a/k/a "Oreja," LUIS CRUZ, a/k/a "Mostro," and CARLOS MACCI, a/k/a "Carlito," the defendants, conspired to distribute and possess with intent to distribute were: (i) 10 grams and more of mixtures and substances containing a detectable amount of a fentanyl analogue, in violation of Title 21, United States Code, Section 841(b)(1)(B); (ii) 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B); and (iii) 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Detective with the NYPD and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal observations, my conversations with law enforcement agents and other individuals, as well as my examination of physical evidence, documents, reports, and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

5. Based on my participation in this investigation, including my personal observations; my review of documents, records, photographs, and videos; my examination of physical evidence; my participation in physical surveillance; and my discussions with other law enforcement officers and other individuals, I know the following, in substance and in part:

### Overview

a. Since approximately 2021, the NYPD has been investigating a drug trafficking organization (the "DTO") operating in the vicinity of 224 South 3rd Street in the

Williamsburg neighborhood of Brooklyn, New York. As explained further below, the DTO sells heroin laced with fentanyl and a fentanyl analogue[1] on the street in front of 224 South 3rd Street and from an apartment inside the apartment building located at 224 South 3rd Street (the "3rd Street Apartment"), among other places. On or about September 5, 2021, the DTO sold Michael K. Williams heroin, which was laced with fentanyl and a fentanyl analogue. Williams died as a result of using that fentanyl-laced heroin. Despite knowing that Williams died after being sold the DTO's product, the DTO has continued to sell fentanyl-laced heroin, in broad daylight, amidst residential apartment buildings.

### Controlled Purchases Prior to the Overdose Death

b. On or about February 10, 2021, an NYPD undercover officer ("UC-1") approached a co-conspirator not named herein ("CC-1") at the corner of South 3rd Street and Havemeyer Street in Brooklyn, New York, and asked for narcotics. CC-1 stated, in sum and substance, that CC-1 was out of narcotics and directed UC-1 to a nearby individual, later identified as IRVIN CARTAGENA, a/k/a "Green Eyes."[2] CARTAGENA sold UC-1 four small waxy paper bags, or "glassines," of suspected heroin; the glassines were stamped with "Mobile."[3] Following the sale, CARTAGENA was arrested. CARTAGENA was searched incident to arrest and 11 plastic baggies of suspected crack cocaine were recovered from his person. In connection with his arrest, CARTAGENA provided an address in the Bronx, New York, as his home address. After his arrest, CARTAGENA was charged with New York state narcotics offenses and released on his own recognizance. On or about August 26, 2021, CARTAGENA pleaded guilty to disorderly conduct, in violation of

---

[1] From my training and experience I know that fentanyl and its analogues are extremely potent and dangerous controlled substances. Narcotics traffickers commonly mix fentanyl and its analogues, due to their low cost and extremely high potency, with other controlled substances for sale, without disclosing to buyers the presence of fentanyl or its analogues. Overdose deaths in New York City and elsewhere often involve fentanyl-laced narcotics.

[2] CARTAGENA, a member of the conspiracy, was charged in Complaint 22 Mag. 971 (S.D.N.Y.) (the "CARTAGENA Complaint").

[3] In my experience, it is typical for a drug trafficking organization to include an identifying feature on the packaging of its drugs sold to customers so that customers can differentiate that organization's "product" from that of other drug dealers. The Mobile stamp appeared to serve that function.

3

New York Penal Law § 240.20, and received a sentence of time served.[4]

        c.  In June and August 2021, a confidential informant working at the direction of law enforcement (the "CI"),[5] conducted two controlled purchases of heroin — which, in both instances, was subsequently determined by the NYPD Controlled Substance Analysis Section (the "NYPD Lab") to be laced with fentanyl — from the 3rd Street Apartment.

        i.  On or about June 17, 2021, the CI purchased ten glassines of heroin from an individual known to the CI as "Mostro" – and subsequently identified as LUIS CRUZ, a/k/a

---

[4] At the time of his February 10, 2021 arrest, CARTAGENA was already on pretrial release from state charges stemming from an arrest on or about August 27, 2020.  Specifically, on or about August 27, 2020, CARTAGENA was arrested for possessing a black air rifle in the vicinity of the 3rd Street Apartment.  A search of CARTAGENA's person incident to arrest uncovered approximately 40 glassines of suspected heroin; one of the glassines was tested by the NYPD Lab and found to contain heroin and fentanyl. For his August 27, 2020 conduct, CARTAGENA also pleaded guilty on or about August 26, 2021 to disorderly conduct, in violation of New York Penal Law § 240.20, and received a sentence of time served.

[5] The CI has worked as a paid informant for the NYPD for several years, including by providing information in narcotics cases.  The information provided by the CI has repeatedly been found reliable and has been corroborated by independent evidence.  For example, information from the CI has led to prior narcotics seizures and controlled purchases of narcotics in other investigations.  In connection with this investigation, the CI's information has been corroborated by video surveillance, physical surveillance, and controlled purchases of narcotics into the targets of the investigation.  The CI has been arrested multiple times for narcotics and theft offenses, including in or around December 2017, when the CI was convicted of criminal possession of a controlled substance in the seventh degree, in violation of New York Penal Law Section 220.03, a Class A misdemeanor.  The CI was also previously convicted in 1993 of manslaughter in the first degree, in violation of New York Penal Law, Section 125.20, a Class B felony.  The CI also informed the Government, in early December 2021, that the CI received a summons for possessing a knife and a desk appearance ticket for having a suspended license.

"Mostro"[6] - in the 3rd Street Apartment. The glassines were all stamped with a "Gatorade" logo. The substances inside one of the Gatorade glassines were tested by the NYPD Lab and found to contain heroin, fentanyl, and para-fluorofentanyl (a fentanyl analogue).

    ii. On or about August 3, 2021, the CI purchased ten glassines of heroin from CRUZ in the 3rd Street Apartment. The glassines were all stamped with an "IKEA" logo. The substances inside the IKEA glassines were tested by the NYPD Lab. All ten IKEA glassines were found to contain heroin and fentanyl, and para-fluorofentanyl was detected in seven of the ten IKEA glassines.

    d. On or about August 26, 2021, an NYPD undercover officer ("UC-2") met with a co-conspirator not named herein ("CC-2") in the Lower East Side neighborhood of Manhattan in order to purchase heroin. CC-2 told UC-2 in sum and substance that they would have to go to Brooklyn to get the heroin. CC-2 and UC-2 took the subway to Williamsburg and walked to the corner of South 3rd Street and Havemeyer Street. UC-2 waited at the corner while CC-2 walked to the vicinity of the 3rd Street Apartment and spoke to a group of males. CC-2 returned to UC-2, obtained $240 from UC-2, and went back to the same group of males. CC-2 then came back to UC-2 and gave UC-2 27 glassines of purported heroin, and then CC-2 took the subway back to the Lower East Side. The purported heroin was in glassines stamped "AAA Insurance." The NYPD Lab tested the contents of ten of the glassines and detected heroin and fentanyl.

---

[6] Based on my discussions with the CI, I have learned that the seller communicated with the CI using a cellphone assigned a call number ending in 5133 (the "5133 Cellphone"). Based on my review of records from T-Mobile, I have learned that the subscriber of the 5133 Cellphone is "Luis Cruz," with a listed address of the building in which the 3rd Street Apartment is located. I have also learned from discussions with the CI that "Mostro" lives alone in the 3rd Street Apartment. An NYPD complaint against LUIS CRUZ related to a 2004 car accident indicates that CRUZ provided his address as the 3rd Street Apartment; similarly, a 2017 property clerk invoice for currency seized from CRUZ indicates that CRUZ listed his address as the 3rd Street Apartment. Based on the foregoing, I believe that the seller, known to the CI as "Mostro," is LUIS CRUZ, a/k/a "Mostro," the defendant.

**The Overdose Death of Michael K. Williams**

e. On or about September 6, 2021, the NYPD responded to a report of an unresponsive man at an apartment in the Williamsburg neighborhood of Brooklyn that was the residence of Michael K. Williams (the "Williams Apartment").[7] Williams was found dead at the scene. On a table in the Williams Apartment, NYPD observed what appeared to be narcotics and related paraphernalia. More specifically, the NYPD found, among other things: a white plate with white powdery residue on it, a straw on the plate, and several glassines that were marked with the stamp "AAA Insurance" and scattered on and around the white plate.

f. Seven of the AAA Insurance glassines were unopened and contained a solid material. The NYPD Lab tested the material and detected heroin, fentanyl, and para-fluorofentanyl, as well as so-called "diluents" that I know from my training, experience, and discussions with members of the NYPD Lab, are commonly used to "cut" — that is, dilute and increase the saleable quantity of — controlled substances. The diluents detected included procaine, lidocaine, xylazine, and caffeine.

g. Multiple other AAA Insurance glassines had been torn open and emptied but appeared to contain residue. The residue from those partial glassines was tested by the NYPD Lab.[8] One partial glassine's residue tested positive for heroin; one partial glassine's residue tested positive for heroin and fentanyl; one partial glassine's residue tested positive for heroin, fentanyl, and cocaine; and one partial glassine's residue tested positive for heroin, fentanyl, para-fluorofentanyl, and cocaine.

h. Testing of the residue of the white plate detected heroin, fentanyl, para-fluorofentanyl, and procaine – which were also all detected in the unopened AAA Insurance glassines – as well as cocaine.

i. The NYPD Lab also tested the residue from the straw and detected heroin, fentanyl, and procaine – which were

---

[7] Based on my review of publicly available records and my conversations with others, I know that Michael K. Williams was a well-known actor.

[8] Based on my discussion with members of the NYPD Lab, I understand that tests of residue may not detect all substances that had once been inside a container.

6

also all detected in the unopened AAA Insurance glassines – as well as cocaine.

   j. Consistent with the drugs found at the scene, the medical examiner found that Williams died from acute intoxication by the combined effects of fentanyl, para-fluorofentanyl, heroin, and cocaine.

   k. Based on the foregoing, my review of photographs of the scene, my experience investigating narcotics offenses, and the subsequent investigation described below, I believe that (i) Williams used the white plate and straw to ingest narcotics nasally; (ii) Williams had previously used the white plate and straw to ingest cocaine; (iii) the AAA Insurance glassines contained heroin laced with fentanyl, the fentanyl analogue known as para-fluorofentanyl, and several diluents, including procaine; and (iv) Williams used the white plate and straw to ingest fentanyl-laced heroin from certain of the AAA Insurance glassines.

   l. NYPD members responding to the scene learned the license plate of the vehicle that Williams parked at his apartment building (the "Williams Vehicle").

### The September 5, 2021 Sale to Williams

   m. License plate reader records show that on or about September 5, 2021 – that is, the day prior to the NYPD's response to Williams's apartment – the Williams Vehicle drove across the Williamsburg Bridge into Manhattan at approximately 12:53 p.m. At approximately 1:27 p.m., the vehicle drove back across the bridge into Williamsburg.

   n. One of Williams's cellphones was recovered from the Williams Apartment on or about September 6, 2021. GPS data on the cellphone also shows Williams's cellphone traveling back and forth across the Williamsburg bridge during the same approximate time period on or about September 5, 2021.

   o. Surveillance video shows that, after returning to Williamsburg, the Williams Vehicle was parked on South 2nd Street, approximately one block away from the 3rd Street Apartment. Williams exited the vehicle and walked to the vicinity of the 3rd Street Apartment in Williamsburg, where he encountered a group of individuals on the street, including CARTAGENA. Williams engaged in conversation with the group, and one of the individuals placed his hand on Williams's shoulder, which I believe indicated that the individual recognized Williams. Williams appeared to speak

with CARTAGENA, after which CARTAGENA walked around a row of trash cans in front of 224 South 3rd Street, retrieved what appears to be a plastic bag, reached inside the bag, appearing to remove an item, and, reaching over the trash cans, made a hand-to-hand exchange with Williams, as depicted in the screenshot below.



p. Following the exchange, Williams and CARTAGENA appeared to exchange numbers, as depicted in the screenshot below.



q. Thereafter, Williams returned to his car, drove back to the Williams Apartment, and never exited the building. The following day, Williams was found dead wearing the same clothing shown in the above screenshots.

### Identification of CARTAGENA

r. Additional video surveillance from on or about September 5, 2021 showed that CARTAGENA, wearing the distinctive turquoise pants shown above and riding an electric scooter also shown above, entered a convenience store at approximately 7:57

p.m.  The convenience store's interior cameras captured images of CARTAGENA's face, including a tattoo on his right arm.

 

    s. I have reviewed a prior arrest photograph of CARTAGENA that, among other things, also shows the right-arm tattoo captured above.

    t. Further, also on or about September 5, 2021, the Instagram account using the handle "Cartanega," which I believe is used by CARTAGENA, publicly posted a mirror "selfie" of an individual I recognize as CARTAGENA, in which CARTAGENA is wearing the same distinctive turquoise pants described above and his right-arm tattoo is visible, as depicted below.



### Subsequent Controlled Purchases

      u.  Since the fatal overdose, the NYPD has conducted multiple controlled purchases of fentanyl-laced heroin from the DTO.  In addition, I and other members of the NYPD have conducted physical and video surveillance of the vicinity of the 3rd Street Apartment.  I and other officers have regularly observed DTO members selling narcotics together on the sidewalk in front of the 3rd Street Apartment, where the DTO keeps a stash of narcotics outside, behind a row of trash cans (visible in paragraph 5(o), above).  In particular, HECTOR ROBLES, a/k/a "Oreja," and CARLOS MACCI, a/k/a "Carlito," the defendants, along with CARTAGENA – prior to CARTAGENA flying to Puerto Rico[9] – were regularly observed

---

[9] Based on discussions with the CI, I have learned that the individual known to the CI as "Green Eyes" – whom I believe to be CARTAGENA for reasons explained herein – used a cellphone assigned a call number ending in 2987 (the "2987 Cellphone").  The 2987 Cellphone was in frequent communication with a number ending in 9565 (the "9565 Cellphone"), which, based on information from the cellular provider for the 9565 Cellphone, is subscribed to by an individual ("Individual-1") with whom I believe CARTAGENA shares

together selling at that location, while LUIS CRUZ, a/k/a "Mostro," the defendant, sold the DTO's same narcotics to the CI from inside the 3rd Street Apartment.

*September 7 Purchase from CRUZ and ROBLES*

v. On or about September 7, 2021, the CI conducted a controlled purchase of ten glassines of heroin from the 3rd Street Apartment. The glassines were stamped with a "Conoco Gas" logo. The substances inside the Conoco Gas glassines were tested by the NYPD Lab. All ten Conoco Gas glassines were found to contain heroin and fentanyl, and para-fluorofentanyl was detected in five of the ten Conoco Gas glassines.[10]

w. Based on discussions with the CI, I have learned that LUIS CRUZ, a/k/a "Mostro," and HECTOR ROBLES, a/k/a "Oreja," the defendants, were present in the 3rd Street Apartment during the September 7, 2021 sale and related conversation, which was audio-recorded by the CI. During that recorded conversation, the CI discussed Williams's apparent overdose death with CRUZ and ROBLES. The CI asked, in substance and part, if the drugs the CI was purchasing were "the same shit" and told CRUZ and ROBLES that the CI did not "want to die." CRUZ subsequently responded in substance and part: "what, what you think that it has -- ah, ah, ah, ah -- fentanyl and shit? We don't, don't fuck with that." Subsequently, after the parties mentioned the police, the CI stated in substance and part, "At least y'all were smart. Y'all changed the name" – which I believe, based on my involvement in this investigation and discussions with the CI, was a reference to

---

a child. Among other things, I have reviewed a public Facebook page in the name of Individual-1, including photographs of Individual-1, CARTAGENA, and a child together. Based on cellphone location information from the cellular provider for the 2987 Cellphone used by CARTAGENA, which was provided pursuant to a court-authorized warrant and order, I have learned that, on or about September 18, 2021, the 2987 Cellphone appeared to be located at John F. Kennedy Airport ("JFK Airport") for more than twelve hours and then, later that night, was located in Puerto Rico. While at JFK Airport, and in the days after arriving in Puerto Rico, the 2987 Cellphone had multiple communications with the number ending in 5049 used, as described herein, by HECTOR ROBLES, a/k/a "Oreja," the defendant.

[10] Procaine, xylazine, and caffeine were detected in all ten glassines, and papaverine was additionally detected in four of the ten glassines.

11

changing the stamp on the glassines from AAA Insurance to Conoco Gas.

    x. Contrary to CRUZ's representation, the Conoco Gas glassines all contained fentanyl, as noted above.

*September 8 Purchase from CARTAGENA*

    y. On or about September 8, 2021, the CI was shown the video surveillance of CARTAGENA's sale to Williams described above and, based on the CI's prior interactions with the seller, identified the seller as "Green Eyes."

    z. On or about September 8, 2021, the CI conducted a controlled purchase of heroin from "Green Eyes," whom I believe to be CARTAGENA for reasons set forth above, on the street nearby the 3rd Street Apartment, of a single glassine. The glassine was stamped "AAA Insurance." Like the unopened AAA Insurance glassines recovered from the Williams Apartment, the AAA Insurance glassine purchased from CARTAGENA on or about September 8 contained heroin, fentanyl, and para-fluorofentanyl, as well as procaine, lidocaine, xylazine, and caffeine,[11] as confirmed by NYPD Lab testing.

*September 15 Purchase from CARTAGENA*

    aa. On or about September 15, 2021, the CI conducted a controlled purchase of three glassines of heroin from CARTAGENA in the vicinity of the 3rd Street Apartment. Like the glassines purchased from the 3rd Street Apartment on or about September 7, the glassines purchased on or about September 15 were stamped with a Conoco Gas logo. The NYPD Lab determined the glassines contained heroin and fentanyl, as well as procaine, xylazine, papaverine, and caffeine.

*Undercover Purchases*

    bb. Beginning on or about September 15, 2021, an undercover NYPD officer ("UC-3") has conducted approximately 14 purchases of heroin from the DTO, which were all video- and audio-recorded.[12] All of UC-3's purchases were of glassines stamped with

---

[11] The NYPD Lab also detected the presence of another diluent, papaverine, in the September 8 glassine.

[12] Based on my review of UC-3's video recordings of buys, video surveillance, and my participation in physical surveillance, I am familiar with the appearance of the individuals who have sold to

a corporate logo, specifically, "Conoco Gas," "Marlboro," "Hess," and "Balmain Paris." In the aggregate, UC-3 has purchased from the DTO over 80 grams of substances containing heroin, fentanyl, and/or para-fluorofentanyl. For example:

i. On or about September 22, 2021, UC-3 called ROBLES using a number ending in 5049 that ROBLES previously provided to UC-3. During the call, which was audio-recorded, UC-3 arranged to meet for a drug sale. At the time of the call, UC-3 was in New York, New York, and UC-3 told ROBLES in substance and part that UC-3 was in Manhattan and would meet ROBLES in approximately twenty minutes. Upon meeting ROBLES in the vicinity of the 3rd Street Apartment, UC-3 purchased approximately twenty glassines of purported heroin stamped "Marlboro," which NYPD Lab testing confirmed contained heroin and fentanyl.

ii. On or about October 19, 2021, UC-3 purchased 100 glassines of purported heroin from CARLOS MACCI, a/k/a "Carlito," and ROBLES in the vicinity of the 3rd Street Apartment. The NYPD Lab tested a sample of the 100 glassines, which tested positive for heroin, fentanyl, and para-fluorofentanyl.

iii. On or about October 22, 2021, UC-3 purchased 200 glassines of purported heroin stamped "Marlboro" from ROBLES in New York, New York. The NYPD Lab tested a sample from the 200 glassines, which tested positive for heroin, fentanyl, and para-fluorofentanyl.

iv. On or about January 11, 2022, UC-3 purchased 500 glassines of purported heroin stamped "Balmain Paris" from ROBLES in New York, New York.

WHEREFORE, deponent respectfully requests that warrants issue for the arrests of HECTOR ROBLES, a/k/a "Oreja," LUIS CRUZ, a/k/a "Mostro," and CARLOS MACCI, a/k/a "Carlito," the defendants,

---

UC-3. I have compared photographs of ROBLES and MACCI from their prior arrests with two of the sellers, and believe ROBLES and MACCI to be those two sellers.

and that they be arrested and imprisoned, or bailed, as the case may be.

*/s/ Mark Gurleski* by SDA with permission
_____
MARK GURLESKI
Detective
New York City Police Department

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1, this
February 1, 2022

_____
HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK