UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA,                  :        22 CR 92 (RA)

                   - v. -                                   :

CARLOS MACCI,                              :

               Defendant.                          :

----------------------------------------------------------------X

## SENTENCING MEMORANDUM ON BEHALF OF
## DEFENDANT CARLOS MACCI

BENJAMIN ZEMAN, ESQ.
ZEMAN & WOMBLE, LLP
20 Vesey Street, Suite 400
New York, New York 10007
Phone (718) 514-9100

*Attorney for Defendant Carlos Macci*

The war on drugs in the United States has been a profound failure that has ruined lives, filled prisons, and cost a fortune. And in the end, drugs won the war on drugs.

Richard Nixon launched the contemporary drug war in the U.S. in 1971 when he signed the Controlled Substances Act and declared drug abuse as "public enemy number one."[1] Since making that declaration, drug addiction and overdose deaths have steadily grown worse.[2] While drug enforcement and punishment have cost billions of dollars annually, this failed war has subjected millions to criminalization, incarceration, lifelong criminal records, and a host of other collateral consequences that disrupted or altogether eliminated access to adequate resources and support for so many to have a chance to live healthy, productive lives. Carlos Macci, who stands before Your Honor to be sentenced for his liminal role in his neighborhood's drug trade, is yet another example of the millions of lives that have been broken and lost to the failed war on drugs.

"For over 50 years, the United States had only one answer to the question of how to save lives and reduce harm from drug use: punishment and prison. The result of this horrifying experiment is a mountain of evidence showing the overall effect of imprisonment is null. Prison sentences do not improve safety. They do not save lives. They do not help people recover from substance use disorder. They do not keep us safe from or reduce the supply of dangerous drugs, or save lives in the event of an overdose."[3] What we have been doing has not worked.

On April 4, 2023, Carlos Macci was brought to the United States Courthouse at 40 Foley Square where he appeared before Your Honor and pled guilty to agreeing with others to possess

---

1 Davenport-Hines R. *The pursuit of oblivion: a global history of narcotics 1500-2000*. London: Weidenfeld & Nicolson; 2001.
2 Drug Overdose Death Rates | National Institute on Drug Abuse (NIDA) (nih.gov), https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates
3 "The War on Drugs Failed – Lawmakers Must Meet the Fentanyl Crisis With New Solutions" by Taylor Pendergrass, Director of Advocacy, ACLU. https://www.aclu.org/news/smart-justice/the-war-on-drugs-failed-lawmakers-must-meet-the-fentanyl-crisis-with-new-solutions

and distribute narcotics in violation of 21 U.S.C. § 841(b)(1)(C). Minutes before he admitted his wrongdoing, mere moments after he had been brought into the court room, handcuffs removed, he settled into his chair and with the aid of a Spanish-language interpreter, looked at me and said, "wow, this is crazy. I feel like this is a dream. I can't believe where I am." When I asked him to elaborate, he explained that this was the first time he had been out of the Essex County Jail ("Essex") in fifteen months.

"I've been in that jail for so long," he said, "I've been in the medical wing of the jail and it is really nice just to be out. To see different people. This is a very nice court room."

Carlos Macci broke the law and his actions deserve commensurate consequences. But what is commensurate when it comes to Carlos Macci? What is appropriate for a seventy-two-year-old man with unaddressed and untreated intellectual disorders? What is suitable for a man who has been addicted to opioids and repeatedly incarcerated for the past fifty years? What is fair?

Carlos Macci's criminal deeds should not remove our society's responsibility to adequately care for his body and mind. Or at least try. Similarly, his crimes do not absolve us from acknowledging the culture and environment from which Carlos Macci's addiction and perpetual incarceration blossomed. It is high time that we try to address and confront the root causes of a culture from which addiction is not only ubiquitous but is often fostered, and in many ways, compelled to continue unimpeded by individual interests and corporate greed. So how do we fix it if we are unwilling to acknowledge this? We are all complicit in the failure of the war on drugs, but until we speak loudly about this catastrophe the more likely it is that the disaster will continue. As the late poet Czeslaw Milosz reminds us, "in a room where people unanimously maintain a conspiracy of silence, one word of truth sounds like a pistol shot." We must not duck and cover.

What we are doing is not working. We must try to do better. All of us.

Admittedly, the war on drugs was sold to the public as coming from a good place; intending to help fight a scourge. We wanted to believe that the nation's policy and lawmakers' hearts were in the right place. But all of the evidence has shown otherwise. Greed, fear, and a collective reflex to celebrate corporate and personal profits while also engaging in knee-jerk "tough on crime" responses have kept us in this moment. Addiction, incarceration, death. Lather, rinse, repeat. A brilliant artist, actor and activist, Michael K. Williams, is dead. A victim of the same opioids that have killed so many while showering untold benefit on so few. Michael K. Williams is a tragic victim in this case and the larger failed war on drugs. But so too is Carlos Macci.

As David Simon[4] so brilliantly articulates in his letter to Your Honor, "no possible good can come from incarcerating a 71-year-old soul, largely illiterate, who had himself struggled with a lifetime of addiction and who was not engaged in street-level sales of narcotics with ambitions of success and profit but rather as someone caught up in the diaspora of addiction himself, living one day to the next and heedless of the damage done not only to others but to himself. Michael [K. Williams] would look at Mr. Macci and hope against hope that this moment in which he finds himself might prove redemptive, that his remaining years might amount to something more, and that by the grace of love and leniency, something humane and worthy might be rescued from this tragedy."[5] And as Michael K. Williams himself argued, "our society has been using jails and prisons as a dumping ground for the mentally ill and those addicted to drugs. These human beings don't belong in prison, they belong in treatment, yet we've pushed them into cages and

_____

4 Creator of the HBO drama, *The Wire*, Mr. Simon was a dear friend and collaborator with Mickael K. Williams.
5 Exhibit A - Letter from David Simon to the Honorable Ronnie Abrams.

denied them their humanity."[6]

Pursuant to the Plea Agreement that Carlos Macci voluntarily entered into with the Government, his conceded lesser culpability than his co-defendants, his advanced age, his lack of education, his lack of past mental health treatment, the diagnosis and recommendation contained in the report drafted by forensic psychologist Dr. Leo Shea, the attached mitigation report, Michael K. Williams' own publicly stated opposition to mass incarceration and the war on drugs, and Carlos Macci's real need for substance abuse and psychological treatment, I ask Your Honor to sentence Mr. Macci to the time that he has served, with a mandate to a secure inpatient residential facility and allow him to begin the next, and likely final chapter of his life, with a modicum of compassion, with at least a glimmer of optimism. By rendering a non-incarceratory sentence, we give Carlos Macci a chance at peace. We give him at least a semblance of hope.

## Introduction

Carlos Macci broke the law. Undoubtedly. For years, he and his co-defendants spent nearly all of their time in the vicinity of 224 South 3rd Street in the Williamsburg section of Brooklyn, hanging out on the block; buying and selling drugs, steering hopeful drug purchasers to dealers and always, always using drugs themselves. But Carlos's actions must be placed into their proper context. The criminal acts that took place on that dusty corner of North Brooklyn must be viewed in light of everything that came before. Even at seventy-two years old, Carlos Macci is not fully formed. The heroin-fueled decisions that led Carlos to that block follow a series of childhood traumas, undiagnosed and untreated cognitive impairments, and decades of drug-related arrests and convictions and were in some ways the inevitable conclusion to the story of where Carlos's

---

6 America's Mass Incarceration Habit Needs a Serious Fix | ACLU - https://www.aclu.org/news/smart-justice/americas-mass-incarceration-habit-needs-serious-fix

life had been headed since he left Puerto Rico for New York City in the early 1970s. Carlos's story begins with abandonment, trauma, drug abuse and squalor, but we pray that is not how it will end.

Mitigation specialist Grace Peri-Wieder, LMSW, has prepared an extensive mitigation report on behalf of Carlos Macci.[7] The report lays out, in painful detail, the circumstances that eventually drove Carlos from Puerto Rico to that block in North Brooklyn. It recounts the trauma Carlos has endured: abandoned by his mother and raised in a small house by his grandmother with thirty other relatives; dropping out of school following the second grade; decades of drug abuse; and recent diagnoses of ███████████████████████████. And the Neuropsychological Evaluation conducted and reported by Dr. Leo Shea shows a man who has been "suffering from ███████████████████████████████████████████████████████████████████ ███████████"[8]

All of these factors molded the defining characteristics of Carlos Macci's life: drug abuse, mental illness, distrust of authority and repeated contacts with the criminal justice system. The mitigation report chronicles Carlos's efforts to survive, and the tragedies that his drug addiction have wrought. The Neuropsychological Evaluation lays bare his chronic disabilities and what they have meant for his relationship to our world. And all of this, in the long shadow of the failed war on drugs, properly contextualize why Carlos was on that block for all of those years. I humbly urge Your Honor to carefully read and consider both Ms. Peri-Wieder and Dr. Leo Shea's reports as well as the attached letters from David Simon and Adalberto Alvarez as well as the Presentence Investigation Report in determining a reasonable and just sentence.

---

7 Exhibit B - Carlos Macci Mitigation Report.
8 Exhibit C - Carlos Macci Neuropsychological Evaluation conducted by Dr. Leo Shea at page 6.

**A Sentence Well Below the Guidelines Range Would Be Consistent With the Directives of 18 U.S.C. § 3553(a)**

*Carlos Macci's Background and Personal History*

Carlos Macci was born on July 26, 1951 in Santurce, Puerto Rico, the product of a teenage love affair between Felicitas Contre and Alejandro Macci. (PSR ¶ 85). As Carlos's mother was still a child herself, she left young Carlos[9] to be raised in the care of her own mother, Estefania Velazquez, who was also raising as many as thirty of Carlos's cousins. *Id.* Obviously, this neglect led to sporadic supervision and left young Carlos to fend for himself from a very early age.

After being forced to repeat the second grade several times he eventually gave up and dropped out, never having learned to read or write. As Carlos related to the mitigation expert, "I stopped going to school, my grandma didn't force me to stay … I don't know why I didn't learn to read and write. Nobody told me why I couldn't do those things. My grandma didn't care about that and said that if I didn't go to school, then I have to find a job, so they found me a job at the car shop."[10] But in moments of clarity – nearly seventy years later, Carlos wistfully imagines what life could have been like had he only completed his education. "If I would have learned to read and write, why would I have wanted to sell drugs? If I would have learned to read I would have become either an engineer or an attorney. I would have loved being an engineer, to build bridges and roads … that would have been nice." *Id.*

When Carlos's grandmother passed away, he decided to try to make a life for himself in

---

9 The childhood trauma of parental abandonment is prevalent among prisoners. A study of inmates from ten prisons in the United States found that "[o]ver one-quarter of incarcerated men reported being abandoned during childhood or adolescence." Nancy Wolff & Jing Shi, Childhood and Adult Trauma Experiences of Incarcerated Persons and Their Relationship to Adult Behavioral Health Problems and Treatment, Int. J. Environ. Res. Public Health 2012. at 1909 available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3386595/pdf/ijerph-09-01908.pdf
10 Exhibit B.

6

the United States, moving to Brooklyn in 1971. Through a family connection he was able to secure work at a factory where he was a machine operator, dyeing fabric. He worked there for the next seven years until the factory was shut down and Carlos lost his job. This represented a dramatic and fateful moment in Carlos Macci's life. Illiterate and unable to speak even passible English, Carlos was unable to find another job. Struggling and desperate, he began selling drugs just to, as he explained, "survive." His first arrest was in March of 1978. (PSR ¶ 56).

This represented the second significant shift in Carlos's life. He was no longer just an illiterate, unemployed immigrant with an undiagnosed cognitive impairment who didn't speak the language; now he was a criminal. His mother had abandoned him, he had left his native Puerto Rico, found and lost employment, and now he was in jail. This has been the case for Carlos Macci for the past forty-five years. Drugs, arrest, incarceration; lather, rinse, repeat.

What we have been doing has not been working.

Since his incarceration Carlos has been a productive member of the inmate population who has incurred no disciplinary infractions. (PSR ¶ 6). Despite being held in the infirmary throughout his period of incarceration, and limited in the programming he can participate in due to his illiteracy, Carlos has made friends, played many games, and by his own account, taken a lot of naps. For a guy who has been abusing drugs and living on the streets for more than a half-century, he must be exhausted. Every time I have visited him, he looks healthier and more well-rested than the last time. Life has been hard on Carlos Macci.

I have spent countless hours with Carlos over this past year and a half, both in person (when the conditions at Essex would permit), and on legal phone and video calls. I have learned how very gentle he is. But as discussed in the mitigation report, trauma, addiction and undiagnosed mental

disorders have plagued Carlos since his birth. The sad truth is that despite his warm personality, Carlos is defined by the drugs he was using, selling and helping other addicts purchase. Tragically, the person on his indictment and in the criminal history section of the PSR tell the story of a man who has struggled with drugs and has been swallowed by the failures of our efforts to fight drugs. For Carlos Macci, like so many others, drugs won the war on drugs.

As related by Probation, Carlos has "an extensive history of heroin use dating back to when he was 21 years old."[11] With a broader understanding of the larger problem, it is clear that the role Carlos Macci played in the drug trade on his block was not one meant to enrich him or make others suffer, but rather as a means of perpetuating his own addiction. Carlos was but one more ancillary cog in the narco-reality that is contemporary America. He is not a predator. As his friend, Adalberto Alvarez relates, "Carlito is a generous and helpful person. He was always working, sweeping, picking up trash, cleaning."[12]

By permitting Mr. Macci to enter a plea to the lesser-included offense of Count 1, the Government has conceded that Carlos is in a different position than his co-defendants. Carlos is an old man, coming to the end of his road. The fact that he has survived for as long as he has, living in the manner in which he has lived, is a miracle. It would be a deeply heartrending end if this term of incarceration served as the coda to Mr. Macci's life, rather than leading to a new and final phase that was more triumphant. It is not too late for Carlos Macci's redemption.

The Carlos Macci that I have gotten to know has qualities and personal characteristics that warrant thoughtful consideration when determining an appropriate sentence. I strongly hope and believe that this period of incarceration has changed Carlos's view on life. He is ready for one last

---

11 Presentence Investigation Report Addendum at p. 32.
12 Exhibit D - Letter from Adalberto Alvarez to the Honorable Ronnie Abrams.

chance. The qualities that make him a loyal friend and loved member of his small community will serve him well when he is released.

*Drug Prohibition, Mass Incarceration and Police Militarization Have Not Worked:*

*Michael K. Williams would have advocated for leniency for Carlos Macci and his co-defendants*

"No one wakes up and says they want to be a gangbanger or a drug dealer – that's the last stop on the train. That's what you do when you're drowning and reaching out for something – anything – to survive."[13] This is a quote from Michael K. Williams' posthumous memoir, *Scenes From My Life*. Carlos Macci's life was swallowed by drugs nearly a half century ago, and ever since then he has been suffering through the long-drawn-out process of drowning. His was not the story of an ambitious American Gangster, but rather, the story of a humble immigrant addict.

Like Carlos Macci, Michael K. Williams "was never a recreational drug user. I am an addict, and an addict is always teetering on that edge."[14] That edge teetering was why Carlos Macci was on that block in North Brooklyn on the afternoon Michael K. Williams made his last drug purchase. Carlos Macci, like Michael K. Williams, needed drugs. There is no escaping or softening the deep misery that anyone who knew or admired Michael K. Williams felt when they learned of his overdose. Nothing that I have written should be interpreted as not recognizing what a tragedy his loss is. But in reading his memoir and all of the thoughtful ways he wrote of his own decades-long struggle with addiction and his views on personal responsibility in the context of forgotten people and communities, I couldn't help but return over and over to Carlos Macci.

As a man who battled his own demons for so long, I couldn't help but imagine the ways in which Michael K. Williams would have advocated specifically for Mr. Macci and his co-

---

13 *Scenes From My Life*, Michael K. Williams' posthumous memoir published by Crown New York at page 207.
14 *Id.* at 191.

defendants, and what he would have thought a commensurate sentence for Mr. Macci should be. We should read and reflect on Mr. Williams' own words when judging Mr. Macci because, as Williams acknowledged, "we cannot forget that those closest to the problem are closest to the solution."[15]

In 2014, Michael K. Williams was appointed to be the ACLU ambassador for ending mass incarceration. Soon after his appointment, Mr. Williams wrote and published a moving, personal piece for the ACLU where he related a story about a childhood friend who "suffered from bipolar disorder. Too poor to get the mental health care he needed, he ended up behind bars, and it wrecked him. He was no longer the friend and brother I knew. Between the disorder and what he experienced in prison, he's never been the same – a shell of his former self." [16]

As the Mitigation Report highlights, this is also the story of Carlos Macci. Let us not deny Carlos Macci what is left of his humanity. Michael K. Williams acknowledged that "drugs are not the problem. Drugs are a symptom of the problem."[17] It is impossible to imagine that Michael K. Williams would have advocated for anything other than treatment for Mr. Macci. As further evidence of his outspoken activism for diversion from incarceration, just days after Mr. Williams' death, New York State Assemblywoman Rodneyse Bichotte Hermelyn (D-Brooklyn) began working on legislation aimed at curbing the state's incarceration rates that was to be named in honor of the late actor.[18]

In his inspired and reflective letter to Your Honor urging leniency, David Simon, close

---

15 *Id.* at 227.
16 America's Mass Incarceration Habit Needs a Serious Fix | ACLU - https://www.aclu.org/news/smart-justice/americas-mass-incarceration-habit-needs-serious-fix
17 *Scenes From My Life*, at page 233.
18 NY criminal justice bill to be named after Michael K. Williams (nypost.com) - https://nypost.com/2021/09/08/ny-criminal-justice-bill-to-be-named-after-michael-k-williams/

friend and collaborator with Mr. Williams, writes "Michael's publicly stated opposition to mass incarceration and the drug war, which he detailed in many film projects and personal commitments – that convinces me that he would want me to write this letter."[19]

> Michael's commitment to challenging our nation's rates of incarceration and our reliance on drug prohibition continued with his documentary work and with his engagement with ex-felons and restorative justice groups. Singularly among the actors we worked with on our drama, Michael took to heart the message inherent in our narrative, and for years after our production concluded, he continued to deliver that message in word and deed. I admired him and maintained our friendship long past the years of our professional collaboration. I loved the man, honestly.[20]

But beyond his thoughtful policy positions and macro pronouncements regarding the failure of the War on Drugs and the mistake of mass incarceration, Michael K. Williams also recognized his own role in his addiction and the risks that accompanied that lifestyle. "Addiction is my legacy as much as the darkness of my skin and the sound of my voice."[21] Throughout his memoir he repeatedly concedes that "the blame rests on no one but me – my addiction is what it is."[22]

Similarly, David Simon reflects that, "Michael always declared that he was responsible for himself, that the decision whether to use or cease using would always be his own."[23] As Williams himself acknowledged, "we are the sum of our choices, and I can't escape the truth. It's written down the middle of my face."[24]

---

19 Exhibit A.
20 *Id.*
21 *Scenes From My Life* at 77.
22 *Id.* at 157.
23 Exhibit A.
24 *Scenes From My Life* at 106.

*Prosecution and Incarceration During COVID*

We urge the Court to take into account one additional circumstance – one with which the Court is intimately familiar – the conditions of Carlos's confinement. As is well known, Carlos had the great misfortune of entering prison during a once-in-a-century pandemic, with its absolutely horrific consequences for those incarcerated. And while Carlos Macci was incarcerated in the latter stages of this challenging moment, he still had to contend with the vestiges of lockdowns and restrictions. When he was arrested on February 1, 2022, the Omicron variant was raging. Carlos was diagnosed with COVID and locked down soon after he was arrested. While substandard food, thin mattresses, and the constant sound of rodents in the walls have been standard fare at Essex for a long time, Carlos's term of detention has been of a different scale altogether.

There were multiple reports of extended lockdowns with no electricity, no ability for inmates to leave their cells, and many accounts that the toilets would not flush. Mr. Macci shares that with the exception of his lawyer, translator, mitigation expert and forensic psychologist, he hasn't had a single visitor during his term of incarceration. This is the reality Carlos Macci has been living in since he was detained. As of February 1, 2022, the day of Carlos Macci's arrest, the Omicron variant of COVID-19 was raging through the Metropolitan Detention Center in Brooklyn with 39 inmates currently positive.[25]

In reviewing notes from this period, on February 1, 2022, the day that Mr. Macci was arrested, a nationwide lockdown of all federal prisons was issued following a gang altercation that occurred at a federal penitentiary in Texas.[26] All visits, both social and legal, had been suspended,

---

25 https://www.bop.gov/coronavirus/
26 https://apnews.com/article/coronavirus-pandemic-health-texas-prisons-violence-

and all legal calls scheduled for that time were cancelled. The abnormally harsh conditions of confinement that Carlos has faced go directly to the sentencing purpose of punishment. As Judge Engelmayer has observed:

> Prison is supposed to be punishment, but it is not supposed to be trauma of that nature or close. My colleagues and I commonly informally credit prisoners who have served time awaiting extradition in dreadful prisons overseas with more time served than measured by the calendar. The same logic applies here and then some. Your time in the MCC was way harder than anyone intended when you were detained following your arrest.

*United Stated v. Juan Carlos Aracena de Jesus*, 20 Cr. 19 (PAE) (July 1, 2020), Tr. 36. Many other judges in this district have reached the same conclusion. See, e.g., *United States v. Tiffany Days*, 19 Cr. 619 (CM) (Apr. 29, 2021) (concluding that the jail conditions the defendant had experienced were as inhuman as in any Colombian prison); *United States v. Saldana*, 17 Cr. 512, ECF No. 535 at 16–17 (S.D.N.Y. Sept. 10, 2019) (Wood, J.) ("I am aware the conditions at the MCC are very dreadful, and it is my intention to give every defendant who has suffered in that way a break because of that.").[27] There can be no question that Carlos's imprisonment for the last year-and-a-half been more punitive than normal, and as a result less time is required to punish him.

## <u>Argument</u>

Carlos Macci's life has been overshadowed and dominated by drugs and the streets; places where an illiterate man who didn't speak the language had his hopes dashed repeatedly. Although Carlos Macci made a run at respectability when he arrived in Brooklyn in the early 1970's, with the loss of his factory job and little stability, his lack of education was punctuated by the proliferation of drugs. To imagine that Carlos's story could have culminated in any other way is

a0e7b61c5bdc5bbc25a691cc0a6920ba

[27] Although these cases address the conditions at the MCC, the sentiments are similarly applicable to the MDC, in which the conditions of confinement have been equally harsh.

hopeful, but most likely naïve. Illiterate with an undiagnosed intellectual disability and no family network, there was no human infrastructure to support him, there were no social systems or resources in place to lift him up or give him a chance.

A kid born without a chance; he made what many may call all the predictable mistakes. "Show me a struggling man and I'll show you a boy never given a chance to change."[28] Our minds beg to imagine – if only there had been a tether, a role model, a landing place that he could trust. If only there had been services in place to help Carlos find the right path. But there weren't. Carlos Macci became some version of a survivor. A survivor who grew to manhood with a skewed and broken sense of right and wrong and little to zero exposure to the rewards of honest labor and a good day's work.

As Michael K. Williams accurately pointed out, "by the time they get to the corner, there has been a series of things that led to that decision. No one wakes up at the top of the mountain and decides they would like it better down there at the bottom. They end up there out of desperation. We don't spend enough time examining the wider picture, the steps that got them there. We don't tell that part of the story. And to tell half the story is to spread a lie."[29]

To be clear, the undiagnosed impairments and decades of drug addiction do not excuse the choices he has made, the actions he has subsequently taken or his criminal behavior. But they do contextualize who Carlos Macci is and should haunt us as a society by offering a clearer understanding of how he was so profoundly handicapped in the ways of civilized society. Carlos Macci has made mistakes and committed crimes. But what is we believed, and made a meaningful gesture with that belief, that even in his advanced age, the power of redemption exists within this

---

28 *Scenes From My Life*, at page 18.
29 *Id.* at 207.

14

man, as does his capacity to become a contributing member of society.

We must imagine this as reason for hope. As David Simon states about his dear friend in his letter to Your Honor, "he believed in redemption. He fought hard for his own and everyone in Baltimore, Brooklyn and everywhere else he encountered. He would fight for Mr. Macci."[30] The reality is, whatever sentence Your Honor imposes will not fix the problems that created the environment from which Carlos Macci is a product. Carlos Macci is a product not just of Puerto Rico and Brooklyn, but also the vestiges of the failed war on drugs. Drugs won the war on drugs. Purdue Pharma won the war on drugs. The Sackler family won the war on drugs. Carlos Macci, Michael K. Williams, and the rest of us lost.

An additional term of incarceration will do nothing to help Carlos Macci or address the macro systematic forces that paved the road to where he is today. "All the mother's love in the world cannot save you without access to help, and during that time in Reagan's America, resources were snatched away from those who needed it most. Some of America got rich while a whole other America – Black and poor – was left to drown."[31] Justice requires deep soul searching from everyone who may have an opinion about what an "appropriate" sentence in this case should look like. Additional years of incarceration will not fix the problem. Additional years or even months of incarceration will not help Carlos Macci. Any additional term of incarceration will not stop the next overdose. Sentencing this seventy-two year old man to prison will only serve to perpetuate the environment in which Carlos Macci came to age. What we have been doing has not worked.

The Probation Office has recommended a sentence of 120 months,[32] but we ask that Your

---

30 Exhibit A.
31 *Scenes From My Life*, at 87.
32 Presentence Investigation Report, Document 54 at page 33.

Honor render a sentence significantly below the guidelines and to sentence Mr. Macci to the time he has already served with a mandate to a secure inpatient residential facility.[33] A modicum of mercy for Mr. Macci fortifies his prospect for hope. And from that hope, we believe that Carlos Macci can, in his last chapter, become a viable and positive presence in his community.

Perhaps the primary goal of sentencing is to create a path for a defendant's reform and improvement. With a client as advanced in age as Carlos Macci, we also need to consider what benefit anyone could enjoy by further incarcerating this man. A more utilitarian goal of sentencing is to ensure that a defendant never breaks the social contract again. And what kind of promise can we make with respect to that aim? We can offer hope and a chance. As Michael K. Williams pointed out while writing about his own addiction and relapses, "there's no line that divides making it from not making it, because it never ends. I still wrestle with demons that won't leave me. They never go away; they just get quiet enough so I can think straight."[34]

Although the "reform and commitment" sentencing motivations differ, the goal is shared – the defendant becomes a law-abiding individual and contributes positively to society. That is the dream for Mr. Macci, and sadly, because of our collective lack of creativity for people like Mr. Macci, he has been failed repeatedly. While there is a certain lawlessness or recidivism that could justify incapacitation eclipsing the goal of rehabilitation, that is most definitely not the case for Carlos Macci. None of us are better off with Carlos Macci in prison.

Mr. Macci's extrinsic participation in the charged conspiracy, his specific role in this particular offense, the difficult story of his life, his decades of drug addiction and untreated mental and physical ailments, demand a sentence grounded primarily in fostering the hope that he can live

---

33 Exhibit E - Information for the Institute for Community Living
34 *Scenes From My Life*, Introduction at xvi.

out his final days in some semblance of freedom and a modicum of much needed dignity. Prior to

his involvement in this crime, Carlos Macci had lived an unstable and aimless, drug fueled life.

He has been as much of a victim of the failed war on drugs as anyone. But we must also try to

imagine an end of his story that is shrouded in hope. As Michael K Williams' words made clear,

"we are all works in progress. Everybody is a work in progress."[35] Even septuagenarian junkies.

### Conclusion

Society's solutions have been, at best, dim in the light of this enormous crisis. "We have

spent 40 years stuffing our prisons, mostly with black and brown men, and for what? This isn't

who we are. America, we can do better. We have to, for all people."[36] We need to end the flow of

nonviolent drug addicts into both the criminal justice system and our prisons. The war on drugs

has failed. It is high time to replace an ineffective strategy with more humane and sensible

solutions. Let's not just write off Carlos Macci. What we have been doing does not work.

These extraordinary times and unprecedented conditions of confinement demand the mercy

of a more enlightened response. We submit that, given the unstable circumstances of Mr. Macci's

early life, his mitigating role in the offense, his decades of substance abuse history, his declining

mental health, the conditions of his confinement and his willingness to accept responsibility for

this criminal activity, a sentence of the time that he has already served with a mandate to a secure

inpatient residential facility is justified in this case and sufficiently balances the various goals of

sentencing.

Carlos Macci's road to rehabilitation depends on his ability to transform a lifetime defined

---

35 *Scenes From My Life*, Author's Note
36 America's Mass Incarceration Habit Needs a Serious Fix | ACLU - https://www.aclu.org/news/smart-justice/americas-mass-incarceration-habit-needs-serious-fix.

by drug abuse and broken promises into one of potential and hope. But he can't do it alone. As a society, we owe Carlos Macci a better circumstance in which to finish out his life. We owe him the pledge of promise and we owe him the knowledge that he has not been disregarded. It is with this kind of action and this kind of faith, we extend hope for some of our society's most disadvantaged and disregarded human beings.

Let us not disregard the human context in which these harms were caused. Both the harm to Michael K. Williams as well as the harm to Carlos Macci and his co-defendants. All victims of the same failed policies. The criminal justice system is far too often steered by a desire for vengeance, which ultimately serves no one. Vengeance will not serve Carlos Macci. Vengeance will not serve Michael K. Williams or his family, whose pain must continue to be heard and acknowledged. But most importantly, vengeance will not serve *We, the People*. As Michael K. Williams made clear in the introduction to his memoir, "I mean, what else are we here for if not for each other?"[37]

We must recognize that increasingly harsh sentences for narcotics offenses have not resulted in lower rates of recidivism or greater public safety, much less healthier communities. The numerous indictments the SDNY has brought against narcotics conspiracies following Carlos Macci's arrest and detention only underscore this point. Our overly punitive system does not fix the problem but arguably destabilizes these communities further, placing those residents at greater risk.

True justice requires compassion, empathy, and the willingness to acknowledge where we have been too punitive in the past and how we can do better going forward. Compassion is not a

---

37 *Scenes From My Life*, at page xvii.

limiting force. Yes, Michael K. Williams deserves our compassion, but so too does Carlos Macci. Our collective sadness about the premature loss of the brilliant artist Michael K. Williams should in no way diminish our compassion for Carlos Macci – a victim himself. Cultivating compassion does not undermine our commitment to holding space for victims and their families to grieve, be angry, and ultimately to heal. We can expand the parameters of our compassion to also include the people who contributed to the harm, and embrace a corrective, compassionate sentence that will allow for growth, rehabilitation, and ultimately redemption. Carlos Macci is capable of redemption. By rendering a sentence of the time that he has already served with a mandate to a secure inpatient residential facility, we give him that chance. We give him hope.

Dated:  July 6, 2023
        New York, New York

                                        Respectfully submitted,

                                        Benjamin Zeman
                                        Attorney for Carlos Macci
                                        ZEMAN & WOMBLE, LLP
                                        20 Vesey Street, Suite 400
                                        New York, NY 10007
                                        (718) 514-9100

19